IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NOLAN KINARD FLOYD, SR.,

    Plaintiff,

    v.                                                      Civil Action No.:  PX-23-114

RN PRINCE TALO, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Plaintiff Nolan Kinard Floyd, Sr., an inmate currently held at North Branch Correctional Institution, has filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he received constitutionally inadequate medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Defendants Dr. Mulugeta B. Akal and nurse Prince Talo have separately moved to dismiss the Amended Complaint or alternatively for summary judgment to be granted in the favor.  ECF Nos. 15, 20.  The Court advised Floyd, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to respond to the motions could result in adverse action taken in this matter without further notice.  ECF Nos. 16, 21.  To date, Floyd has not responded.  Upon review of the record, no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons discussed below, Defendants' motions will be granted.

**I.      Background**

Floyd accuses Defendants nurse Talo and Dr. Akal of constitutionally inadequate medical care arising from their treatment of his inguinal hernia while he was detained at Maryland Reception, Diagnostic and Classification Center.  Floyd specifically contends both nurse Talo and Dr. Akal told Floyd that all the necessary paperwork would be submitted for Floyd to receive an

x-ray and surgery for his hernia.  *Id.* at 2, 4.  But, says Floyd, because he never received an x-ray nor was he seen by a surgeon, he suffered a ruptured hernia.  *Id.* at 4.

The medical records appended to Defendants' motions reflect the following course of care. On September 18, 2020, nurse Talo first examined Floyd during sick call.  During that examination, Floyd told nurse Talo about his hernia and advised that he needed treatment but that he was not in pain.  ECF No. 15-5 at 40.  Nurse Talo noted a "firm knot that comes up with strain" in Floyd's left groin.  *Id.*

Nurse Talo immediately notified Dr. Akal, who also examined Floyd.  Dr. Akal placed Floyd in "a Trendelenburg position where he was supine on the table with his head declined below his feet."  ECF No. 15-2 at ¶ 6.  Dr. Akal had Floyd cough, which resulted in the knot coming up, but it was reducible, meaning the knot could be pushed back in.  *Id.*  The hernia was present in the left inguinal area but only with standing and straining.  *Id.*  Dr. Akal showed Floyd how to reduce the hernia and instructed him to return if it became irreducible.  *Id.*  The records do not reflect that either nurse Talo or Dr. Akal ordered x-rays or sought a surgical consult at that visit.

Dr. Akal attests that reducible hernias are "not life threatening and surgical repair is considered elective."  ECF No. 15-2 at ¶ 7.  According to Dr. Akal, a hernia is serious if it becomes "incarcerated," meaning that the bowel "pushes through the hernia and becomes trapped in the sac of the hernia. . . ."  *Id.*  This can result in bowel obstruction, cutting off blood to the small intestine, which can cause intestinal perforation, shock, or gangrene.  *Id.*

Floyd's next medical encounter was on November 11, 2020, when nurse practitioner, Victoria Emelogu, examined him concerning his hernia.  ECF No. 15-6 at 1.  At that visit, Floyd complained of occasional pain.  Nurse practitioner Emelogu noted that no visible bulge or lump existed upon examination.  *Id.*  Floyd was directed to take ibuprofen and return to medical if

necessary.  *Id.*  Floyd saw nurse practitioner Emelogu again on December 2, 2020, complaining of occasional pain from the hernia.  Floyd also reported that ibuprofen did not help the pain and requested stronger pain medication.  *Id.* at 5.  Floyd agreed to take extra strength Tylenol instead. *Id.*

On January 4, 2021, nurse practitioner, Roslyn Deshields, examined Floyd.  ECF No. 15-6 at 7.  Floyd reported that his hernia popped out sometimes, but denied any nausea, vomiting, diarrhea, or constipation.  *Id.*  Floyd requested a surgical consult to repair the hernia.  *Id.*  Nurse practitioner Deshields instructed Floyd to continue with his medication and that he would be seen in the chronic care clinic to follow up.  *Id.* at 7-8.

Four days later, on January 8, 2021, Floyd saw Dr. Akal in the chronic care clinic, and expressed his desire for surgical repair of the hernia.  ECF No. 15-6 at 12.  Dr Akal examined Floyd, and described the hernia as about the size of a ping pong ball and still reducible.  *Id.* Although in Dr. Akal's view, any such surgery would still be considered elective, Dr. Akal submitted the surgical consultation request as Floyd wanted.  ECF No. 15-2 at ¶ 11.

In response to the surgical consultation request, the Utilization Management team returned an alternative treatment plan on January 11, 2021.  The alternative plan recommended continued observation instead of surgery because at that time, Floyd did not present with any other symptoms. *Id.*; ECF No. 15-6 at 9.  Dr. Akal next examined Floyd on April 7, 2021 in the chronic care clinic and told Floyd that the surgical request had been denied.  ECF No. 15-6 at 14-15.

On June 16, 2021, Anulika U. Ezekegbo[1] conducted Floyd's annual health assessment. ECF No. 15-8 at 9-11.  At that visit, Floyd denied any ongoing discomfort from his hernia, which

---

[1] Ezekegbo holds a doctorate of nursing practice (DNP).

was still reducible.  *Id.*  Within the month, Floyd was transferred to Western Correctional Institution following medical clearance.  ECF No. 15-7 at 44-45.

## II.     Standard of Review

Defendants have moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Defendants seek summary judgment, and they submitted Floyd's medical record for the Court's consideration.  Accordingly, Floyd was placed on proper notice that the Court could resolve the matter on summary judgment.  *See* ECF Nos. 16, 21.  The Court, therefore, exercises its discretion to treat the motions as ones for summary judgment.  *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Rule 56(a) provides, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, the court must "view the evidence

in the light most favorable to … the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.     Discussion

The Court construes Floyd's claim as alleging he had been deprived constitutionally medical care, in violation of Eighth Amendment right to be free from "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To survive summary judgment, Floyd must adduce some evidence that Defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting"). A mere

disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto v. Stansberry*, 841 F.3d at 219, 225 (4th Cir. 2016). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Deliberate indifference specifically requires the plaintiff to show that objectively, he was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry. The plaintiff must also demonstrate that defendant's exhibited "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk known to the defendant at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000); *see also Jackson*, 775 F.3d at 179. That said, "negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Adequacy of treatment in this context "is one of medical necessity and not simply that which may be considered merely desirable." *Bowring*, 551 F.2d at 47-48.

Relevant here, this Court has consistently held that deferral of surgery in favor of conservative treatment alone does not amount to deliberate indifference. *See Dyson v. Wexford Health Sources, Inc.*, No. TDC-19-0307, 2020 WL 1158791, at *7 (Mar. 10, 2020), *aff'd*, 2021 WL 5357490 (4th Cir. 2021); *Rivera v. Wexford Health Sources, Inc.*, No. DKC-17-666, 2018 WL 2431897, at * 4 (May 30, 2018); *Dent v. Wexford Health Sources, Inc.*, No. CCB-15-206, 2017 WL 930126, at *8 (D. Md. 2017), *aff'd sub nom, Dent v. Ottey*, 698 F. App'x 99 (Mem) (4th Cir. 2017); *Jennings v. Ottey*, No. WMN-14-1736, 2015 WL 4496431, at *5 (July 22, 2015), appeal dismissed, No. 15-7194 (4th Cir.). However, delay of treatment in the face of significant pain is the kind of harm sufficient to support a finding of deliberate indifference. *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 733-34 (Mem) (4th Cir. 2015); *see Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (collecting cases).

When viewing the record most favorably to Floyd, even if Floyd could demonstrate his hernia constituted a *serious* medical need, no evidence demonstrates that either defendant ignored that need with deliberate indifference. At the single medical encounter between nurse Talo and Floyd, nurse Talo immediately responded to Floyd's complaints by seeking Dr. Akal's consult.

Dr. Akal, in turn, examined Floyd and directed his course of care.  From this, no reasonable trier of fact could conclude that nurse Talo had been deliberately indifferent to Floyd's medical needs. Summary judgment is granted in nurse Talo's favor.

Likewise, nothing about Dr. Akal's course of care amounts to deliberate indifference. Dr. Akal diagnosed Floyd with a reducible hernia, and nothing in the record contradicts that diagnosis. When Floyd complained of pain and sought a surgical consult, Dr. Akal made the surgical consult request to Utilization Management.  Through no fault of Dr. Akal, the request was denied, and shortly after Floyd was transferred to another facility.  Viewing the record most favorably to Floyd, nothing supports that Dr. Akal denied or delayed Floyd's treatment with deliberate indifference. Thus, summary judgment must be granted in Dr. Akal's favor as well.

IV.    **Conclusion**

For the foregoing reasons,  Defendants' motions, construed as ones for summary judgment, are granted.  A separate order follows.

11/30/23
_____                     _____
Date                                                      /S/
                                                              Paula Xinis
                                                              United States District Judge

8